IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 12-184 T

(Judge Marian Blank Horn)

ALBEMARLE CORPORATION AND SUBSIDIARIES,

Plaintiff

v.

UNITED STATES,

Defendant

MOTION TO DISMISS

Defendant, pursuant to RCFC 12(b)(1), respectfully moves the Court to dismiss the complaint in the case without prejudice because this Court lacks subject matter jurisdiction to consider the claims set forth therein. In support of this motion, defendant states the following.[1]

[1]Defendant's motion is based on the facts alleged in the complaint. Defendant contends that even if those alleged facts are true, they do not establish that this Court has subject matter jurisdiction over the claims in issue. The fact that defendant relies on the allegations in the complaint in this motion does not mean that defendant is conceding for any other purpose that the allegations in the complaint are true or correct. In the event this Court denies the present motion, defendant will answer the complaint and conduct discovery.

I. FACTUAL BACKGROUND

In 1996, Albemarle Corporation (hereinafter, "Albemarle"), a domestic corporation, was the parent company of Albemarle S.A. (hereinafter, "ASA"), a corporation incorporated and doing business in Belgium. On December 31, 1996, ASA issued debentures (debt) to Albemarle, providing for semi-annual interest payments at a rate of 6.8% per annum. ASA paid interest each year on the debentures between 1997-2001. (Complaint ¶ ¶ 2, 7, 9.) On September 15, 1999, ASA changed its name to Albemarle Europe SPRL (hereinafter, "Albemarle Europe"). (Complaint ¶ 9.) Neither ASA nor Albemarle Europe paid any Belgian withholding tax with regard to the interest payments on the debentures. (Complaint ¶ 10.)

On October 22, 2001, the Belgian tax authorities issued a notice of adjustment to Albemarle Europe for the years 1996-1998, which included the unpaid withholding taxes on the debenture interest payments the subsidiary made in those years. (Complaint ¶ 11.) On January 31, 2002, Albemarle Europe and the Belgian tax authorities reached an agreement pursuant to which Albemarle Europe would pay the Belgian withholding taxes on the debenture interest payments it made in 1997-2001. (Complaint ¶ 14.) On January 31, 2002 and August 29, 2002, Albemarle Europe paid the Belgian authorities $1,416,740.00. That total was allocated to each of the years 1997-2001 as follows; $412,923.00 for 1997, $412,923.00 for 1998, $412,923.00 for 1999, $111,897.00 for 2000, and $66,074 for 2001. (Complaint ¶ 15.)

On May 15, 2009, over seven years after most of the Belgian withholding taxes in question were paid, plaintiff filed a Form 1120X for 2002, seeking a refund of $961,841.00, based on the additional Belgian withholding tax payments plaintiff made in 2002. (Complaint

¶ ¶ 16,17.) Plaintiff and the IRS agreed to treat that Form 1120X as a claim for refund for each of the years 1997-2001. (Complaint ¶ 18.) Plaintiff does not allege that it filed any protective refund claims for 1997 or 1998, as provided in Treas. Reg. § 301.6402-2, to ensure that the statute of limitations would not expire on any claim for refund based on additional foreign tax credits. Nonetheless, plaintiff claims that it is entitled to a credit in 1997 in the amount of $412,923.00, and a credit in 1998, also in the amount of $412,923.00, based on the additional Belgian withholding tax it paid in 2002 that was allocable to 1997 and 1998. (Complaint ¶ ¶ 15, 27, 29, Ex. E.) For 1997 and 1998, plaintiff reported its taxes on a calendar year basis, so its tax year began on January 1 of each year. (Complaint Exs. A, B.) The due date for the filing of plaintiff's income tax return for 1997 was March 15, 1998, and the due date for its return for 1998 was March 15, 1999. 26 U.S.C. § 6702(b).[2]

Plaintiff paid the additional Belgian withholding taxes for 1997 and 1998, in 2002, but did not attempt to claim a foreign tax credit based on those payments until it filed its Form 1120X on May 15, 2009. (Complaint ¶ ¶ 15, 16.) Plaintiff concedes that the foreign tax credits at issue here relate to 1997 and 1998, respectively. (Complaint ¶ ¶ 27, 29.) On January 20, 2012, the IRS disallowed plaintiff's 1997 and 1998 refund claims because they were not filed within the period set forth in § 6511(d)(3)(A) for filing a claim seeking a refund based on a foreign tax credit. The IRS determined that, to be timely, plaintiff's 1997 refund claim had to filed on or before March 15, 2008, and its 1998 refund claim had to be filed on or before March 15, 2009. Since plaintiff's refund claims for those years were filed on May 15, 2009, the IRS

[2]Citations to the Internal Revenue Code, Title 26, are to the provisions of the Code in effect in the years in issue, 1997 and 1998.

determined those claims were untimely and disallowed them. On March 20, 2012, plaintiff filed the complaint seeking refunds for 1997 and 1998, based on the foreign tax it paid in 2002.

## II. ARGUMENT

### A. *Statutory requirements for pursuing a refund claim in this Court.*

Plaintiff, as the party seeking to invoke this Court's jurisdiction, "must first establish proper jurisdiction in this Court before the merits of any action may be evaluated. The plaintiffs have the burden of establishing such jurisdiction by a preponderance of the evidence." *Larson v. United States*, 89 Fed. Cl. 363, 379 (2009); *see also, Stelco Holding Co. v. United States*, 42 Fed. Cl. 101, 104 (1998)*; Nucorp, Inc. v. United States*, 23 Cl. Ct. 234, 237 (1991).

Before filing a suit for a refund of federal tax, a plaintiff is required to file a claim for refund with the IRS. "It is firmly settled that a properly filed administrative claim for refund is the indispensable prerequisite to this court's exercise of jurisdiction over a taxpayer's suit for refund." *Stelco*, 42 Fed. Cl. at 105. Section 7422(a) sets forth this jurisdictional condition:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

"In order for a claim for refund to have been 'duly filed' under section 7422(a), the filing must comply with the timing requirements set forth in § 6511(a)." *Larson*, 89 Fed. Cl. at 384. The Supreme Court reaffirmed the long-standing principle that the limitations period under § 6511 is jurisdictional, and must be strictly construed, in *United States v. Brokamp,* 519 U.S. 347 (1997). "In failing to meet the requirements of § 6511(a), the taxpayer necessarily fails to satisfy the requirements of § 7422." *Stelco*, 42 Fed. Cl. at 104. The limitation period at issue

here, because the refund claims are based on foreign tax credits, is § 6511(d)(3)(A), which provides a period of 10 years, rather than the usual 3-year limitations period. That statute was amended by the Taxpayer Relief of 1997, § 1056(a), 111 Stat. at 945, for tax years beginning after August 5, 1997. The pre-amendment version of § 6511(d)(3(A) applies to plaintiff's 1997 refund claim because its 1997 tax year began on January 1, 1997. The amended version of § 6511(d)(3)(A) applies to plaintiff's 1998 refund claim because its 1998 tax year began on January 1, 1998. (Complaint Exs. A, B.) Defendant contends that under either version of § 6511(d)(3)(A), plaintiff's 1997 and 1998 refund claims, filed on May 15, 2009, were not timely.

B. *The foreign tax credit.*

Section 901(a) provides that a taxpayer can elect to take a credit against its tax liability for a tax year based on amounts it paid or accrued as tax to foreign governments in that year. The foreign tax credit was adopted by Congress to ensure that income earned in a foreign country, and taxed by that country, is not double taxed in the United States, as was made clear in Senate Report No. 94-938, Part I, Tax Reform Act of 1976, P.L. 94-445, § 1031(a), *reprinted in*, U.S.C.C.A.N., 94th Congress, 2d Sess. 1976, Vol. 4 at 3664:

> This foreign tax credit system embodies the principle that the country in which a business activity is conducted (on in which any income is earned) has the first right to tax that income arising from activities in that country, even though the activities are conducted by corporations or individuals resident in other countries. Under this principle, the home country of the individual or corporation has a residual right to tax income arising from these activities, but recognizes the obligation to insure that double taxation does not result. Some countries avoid double taxation by exempting foreign source income from tax altogether. For U.S. taxpayers, however, the foreign tax credit system, providing a dollar-for-dollar credit against U.S. tax liability for income taxes paid to a foreign country is the mechanism by which double taxation is avoided.

The type of foreign tax payments that can be claimed as a credit against a

corporation's tax liability is set forth in § 901(b), the relevant portion of which reads:

> (b) AMOUNT ALLOWED – Subject to the limitation of section 904, the following amounts shall be allowed as a the credit under subsection (a):
>
> > (1) CITIZENS AND DOMESTIC CORPORATIONS, – In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States;

Section 904(a) limits the amount of the foreign tax credit that can be claimed for any one tax year to, "the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year." In the event the amount of foreign taxes paid or accrued for a particular year exceeds the limit in § 904(a), the taxpayer is allowed by § 904(c) to carryback and carryover the excess amount as follows:[3]

> Any amount by which all taxes paid or accrued to foreign countries or possessions of the United States for any taxable year for which the taxpayer chooses to have the benefits of this subpart exceed the limitation under subsection (a) shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the second preceding taxable year, in the first preceding taxable year, and in the first, second, third, fourth, or fifth succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year, in the amount by which the limitation under subsection (a) for such preceding or succeeding taxable year exceeds the sum of the taxes paid or accrued to foreign countries or possessions of the United States for such preceding or succeeding taxable year and the amount of the taxes for any taxable year earlier than the current taxable year which shall be deemed to have been paid or accrued in such preceding or succeeding taxable year (whether or not the taxpayer chooses to have the benefits of this section with respect to such earlier taxable year). Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart as to

---

[3] In 2004, Congress amended § 904(c) to allow a carryback of unused tax credits only to the first preceding tax year and a carryover to the ten succeeding tax years. American Jobs Creation Act of 2004, P.L. 108-357, § 417(a)(1).

taxes paid or accrued for that year to foreign countries or possessions of the United States.

Treas. Reg. § 1.905-1(a) provides that a taxpayer reporting on the accrual method must take the foreign tax credit into account in the year in which the foreign taxes accrue, subject to the provisions of § 905(c). Section 905(c), for tax years beginning after December 31, 1997, provides rules for determining the tax credit when the foreign taxes are not paid within two years of the tax year to which the foreign taxes relate.[4] Section 905(c) as amended reads (emphasis added):

(c) ADJUSTMENT TO ACCRUED TAXES. –

(1) IN GENERAL. – If –

(A) accrued taxes when paid differ from the amounts claimed as credits by the taxpayer,
(B) accrued taxes are not paid before the date 2 years after the close of the taxable to which such taxes relate, or
(C) any tax paid is refunded in whole or in part,

the taxpayer shall notify the Secretary, who shall redetermine the amount of the tax for the year or years affected. The Secretary may prescribe adjustments to the pools of post-1986 foreign income taxes and the pools of post-1986 undistributed earnings under sections 903 and 960 in lieu of the redetermination of the preceding sentence.

(2) SPECIAL RULE FOR TAXES NOT PAID WITHIN 2 YEARS. –

(A) IN GENERAL. – Except as provided in subparagraph (B), in making the redetermination under paragraph (1), no credit shall be allowed for accrued taxes not paid before the date referred to in subparagraph (B) of paragraph (1).

---

[4]For tax years beginning before December 31, 1997, the relevant portion of § 905(c) provided:

If accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded in whole or in part, the taxpayer shall notify the Secretary, who shall redetermine the amount of the tax for the year or years affected.

(B) TAXES SUBSEQUENTLY PAID – Any such taxes if subsequently paid –
(I) shall be taken into account –
(I) in the case of taxes deemed paid under section 902 or section 960, for the taxable year in which paid (and no redetermination shall be made under this section by reason of such payment), and
(II) in any other case, *for the taxable year to which such taxes relate*, and
(ii) shall be translated as provided in section 986(a)(2)(A).

It is not disputed that the Belgian tax for 1997 and 1998 that is the basis for plaintiff's refund claims for those years was not paid within 2 years after the close of those tax years. Therefore, under § 905(c), for purposes of the foreign tax credit, the Belgian tax plaintiff paid in 2002 related back to 1997 and 1998, the years in which the disputed interest payments that gave rise to the Belgian tax were made. Plaintiff concedes that the proper years for taking into account the foreign tax credits in issue are 1997 and 1998, not 2002. (Complaint ¶ ¶ 15, 27, 29.) The complaint seeks a refund of tax for 1997 and 1998 based on the foreign tax credits properly allocable to those years. (Complaint ¶ ¶ 16-18, 27, 29.)

The accrual of foreign taxes for purposes of the foreign tax credit is based on the all events test, not the economic performance rules normally applied to determine when a tax accrues. Treas. Reg. § 1.461-4(g)(6)(iii)(B). When a taxpayer contests the imposition of a foreign tax, it is not accrued until the contest is resolved, but, in the case of a foreign tax credit, that accrual relates back to the year to which the foreign tax relates. This was made clear by this Court in *Reading & Bates Corporation v. United States*, 40 Fed. Cl. 737, 753-54 (1998):

> The accrual of a foreign tax credit is governed by the all events test. If the foreign tax is uncontested, the tax credit applies to the year in which the foreign tax was levied. If, however, the taxpayer contests the foreign tax assessment, the taxpayer must accrue the foreign tax as a credit against the United States tax in the year in which the liability has been finally determined. *See*, *Cuba Railroad Co. v. United States*, 124 F. Supp. 182 (S.D. N.Y. 1954). Once the liability becomes fixed, after the dispute has been resolved, the accrued foreign tax "relates back" to the year in which the foreign tax was levied.

> Rev. Rul. 58-55, 1958-1 C.B. 266, *see, United States v. Campbell*, 351 F.2d 336, 338 (2d Cir. 1965).

Revenue Ruling 58-55, 1958-1 C.B. 266, held that "a foreign tax for the purpose of such credit [§ 901] is accruable for the taxable year to which it relates even though the taxpayer contests the liability therefor and such tax is not paid until the contested liability is finally determined." *See also*, Rev. Rul. 77-487, 1977-2 C.B. 479. This relation back rule for accruing foreign taxes is well established. *AMP Inc. v. United States*, 185 F.3d 1333,1340 (Fed. Cir. 1999); *United States v. Campbell*, 351 F.2d 336, 338 (2d Cir. 1965); *United States v. Cruz*, 698 F.2d 1148, 1151 (11th Cir. 1983); *United States v. Tilga*, 824 F.Supp.2d 1295, 1323-34 (D. N.M. 2011).

Revenue Ruling 84-125, 1984-2 C.B. 125, further confirms that a contested foreign tax accrues in the tax year to which the tax relates, not in the year when the contest is resolved and the foreign tax is paid. Revenue Ruling 84-125 states (emphasis added):

> Rev. Rul. 70-290, 1970-1 C.B. 160, holds that the provisions of section 905(c) of the Code contemplate that credit is to be given for the taxes paid to a foreign government, and that a redetermination of the credit is to be made in the event of a refund of such taxes to the taxpayer by the foreign government. Thus, *the portion of contested foreign tax that is actually paid by the taxpayer is accruable for the tax year to which the foreign liability relates*, as provided in section 905(a), and such accrual can be made at the time of payment, even though the amount of the tax liability is not finally determined.

The basis for the relation back principal is the fact that the purpose of the foreign tax credit is to prevent double taxation. If the foreign tax credit can be claimed in the year in which the taxpayer's contest with the foreign country is resolved, rather than the year to which the foreign tax relates, the credit would not be offsetting the U.S. tax on income to which the foreign tax relates, thereby frustrating the purpose for the credit. In addition, if a foreign tax that accrued when a contest ended did not relate back to the year to which that tax is properly

allocable, it would be impossible to accurately compute the limitation in § 904(a), to determine any carry backs or carry overs pursuant to § 904(c), or to perform the redetermination called for by

§ 905(c).

C. *The applicable limitations period.*

For tax years beginning before August 5, 1997, § 6511(d)(3)(A) provided that a claim for refund based on a foreign tax credit must be filed within the following period:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for the filing of the return for the year with respect to which the claim is made.

For tax years beginning after August 5, 1997, the last sentence of § 6511(d)(3)(A) is changed to provide that the limitation period for filing a claim for refund "shall be 10 years from the date prescribed by law for the filing of the return for the year in which such taxes were actually paid or accrued." Taxpayer Relief Act of 1997, § 1056(a), 111 Stat. at 945.

In House Conference Report No. 105-220, Taxpayer Relief Act of 1997, P.L. 105-34, 105th Congress, 1st Session, *reprinted in* , U.S.C.C.A.N., 1997, 1st Sess., Vol. 3, at 1388-89,

Congress explained its intention in amending § 6511(d)(3)(A), as follows:

*Present Law*

> U.S. persons may credit foreign taxes against U.S. tax on foreign source income. The amount of foreign tax credits that can be claimed in a year is subject to a limitation that prevents taxpayers from using foreign tax credits to offset U.S. tax on U.S. source income. Separate limitations are applied to specific categories of income. The amount of creditable taxes paid or accrued in any taxable year which exceeds the foreign tax credit limitation is permitted to be carried back two years and carried forward five years.
>
> For purposes of the period of limitations in filing claims for credit or refund, in the case of a claim relating to an overpayment attributable to foreign tax credits, the limitations period is ten years from the filing date for the taxable year with respect to which the claim is made. The Internal Revenue Service has taken the position that, in the case of a foreign tax credit carryforward, the period of limitations is determined by reference to the year to which the foreign taxes were paid or accrued (and not the year to which the foreign tax credits are carried). (Rev. Rul. 84-125, 1984-2 C.B. 125). However, the court in *Ampex Corp. v. United States*, 620 F.2d 853 (1980), held that, in a case of a foreign tax credit carryforward, the period of limitations is determined by reference to the year to which the foreign tax credits are carried (and not the year in which the foreign taxes were paid or accrued).

*House Bill*

> Under the House bill, in the case of a claim relating to an overpayment attributable to foreign tax credits, the limitations period is determined by reference to the year in which the foreign taxes were paid or accrued (and not the year to which the foreign tax credits are carried). No inference is intended regarding the determination of such limitations period under present law.

*See also*, House Report No. 105-148, Taxpayer Relief Act of 1997, P.L. 105-34, 105th Congress, 1st Session, *reprinted in* , U.S.C.C.A.N., 1997, 1st Sess., Vol. 3, at 946-47.

It is clear that Congress in amending § 6511(d)(3)(A), only sought to prevent taxpayers from extending the 10 year period beyond the year to which the foreign taxes related. Congress did not express any intent to alter the long standing relation back rule governing the accrual of contested foreign taxes. Rather, Congress specifically stated that “no inference is intended regarding the determination of such limitations period under present law.” H. Conf. Rep. 105-220. The rule that contested foreign taxes accrue in the year in which the contest ends, and that

accrual relates back to the year to which those taxes relate, was well established "present law" at the time Congress amended § 6511(d)(3)(A).  *Campbell; Cruz;* Rev. Rul. 58-55; Rev. Rul. 77-487; Rev. Rul. 84-125.

The fact that the relation back rule for accruing foreign taxes was not changed by the 1997 amendment to § 6511(d)(3)(A), is confirmed in the decision in *Tilga.*  In that case the Canadian government determined in 2010 that the taxpayer owed additional Canadian tax for her 1999-2004 tax years.  *Tilga*, 824 F.Supp.2d at 1301.  The District Court noted that the 10-year limitations period in amended § 6511(d)(3)(A) began to run in 1999-2004, the years to which the additional foreign taxes related, not 2010, when the dispute over the Canadian tax liability was resolved.  *Tilga,* 824 F.Supp.2d at 1324.

Further, in the legislative history Congress specifically referenced Rev. Rul. 84-125, 1984-2 C.B. 125.  *See*, H. Conf. Rep. 105-220.  Revenue Ruling 84-125 addressed the situation where a taxpayer contested a foreign tax assessment related to its 1971 year.  The taxpayer paid 5x dollars of the tax in 1973, and 15x dollars of the tax in 1978 when the contest was resolved.  The IRS concluded that the year in which the period of limitations in § 6511(d)(3)(A) began to run with regard to the payments in 1973 and 1978 was 1971, stating (emphasis added):

> Although 5x dollars of the total tax assessment of 100x dollars was paid in 1973 and 15x dollars of that assessment was paid in 1978, the total 20x dollars in foreign taxes paid *is considered accruable for 1971, the year to which it relates.*  Consequently, the 10-year period of limitation prescribed in section 6511(d)(3)(A) of the Code is determined with reference to the due date of X's 1971 Federal corporate return, March 15, 1972, even though the foreign tax credit will be carried forward to X's 1972 taxable year.  See Rev. Rul. 77-487, 1977-2 C.B. 479.

The fact that Congress explicitly adopted the Service's position in Rev. Rul. 84-125, on the starting point for the statute of limitations confirms that it had no intention of changing the

long standing relation back rule governing the accrual of contested foreign taxes when it amended § 6511(d)(3)(A) in the Taxpayer Relief Act of 1997.  In addition, in the same act Congress amended § 905(c) to include the relation back rule for determining the proper year to which a foreign tax credit relates.  Taxpayer Relief Act of 1997, § 1102(a)(2), 111 Stat. at 964-65.  Section 905(c)(2)(B)(i)(II) states that the foreign taxes paid more than two years after the close of the tax year to which they relate are to be taken into account "for the taxable year to which such taxes relate."  Congress did not intend that the relevant year for calculation of the statute of limitations in § 6511(d)(3)(A), to be the year in which the foreign tax contest was resolved, rather than the year in which the foreign taxes are to be taken into account for all other purposes.

      Under the relation back rule, and § 905(c), the redetermination of plaintiff's taxable income as a result of the 2002 payment is made with regard to plaintiff's 1998 return, not its 2002 return.  Under § 904(a), the amount of foreign tax credit plaintiff can claim for 1998 is based on plaintiff's income from sources in the U.S. in that year, not in 2002.  Plaintiff's entitlement to any carry back or carry forward under § 904(c) is also based on plaintiff's 1998 U.S. source income, not its 2002 income.  Since all the attributes of the foreign tax credit have to to be determined for 1998, any contention that the limitations period in amended § 6511(d)(3)(A) began to run in 2002 makes no sense.

      In amending § 6511(d)(3)(A), with respect to foreign tax credit carry overs, Congress sought to prevent the limitation period from beginning in a tax year later than the tax year to which the foreign tax related.  H. Conf. Rep. No. 105-220.  Congress clearly did not intend by that amendment that the limitation period in this case should begin in 2002, when all attributes of

the foreign tax credit in issue relate to 1998. Since the Belgian tax plaintiff paid in 2002 relates to its 1998 year, the 10-year limitation period in amended § 6511(d)(3)(A), began on March 15, 1999, the due date for the return for 1998. Rev. Rul. 84-125; *Reading & Bates*.

D. *Plaintiff's 1997 refund claim was not timely filed.*

Plaintiff's 1997 refund claim, based on foreign tax credits related to that year, was filed on May 15, 2009. (Complaint ¶ ¶ 16-18, 27.) The amendments to § 6511(d)(3)(A) in the Taxpayer Relief Act of 1997 were effective for tax years beginning on or after August 5, 1997. Taxpayer Relief Act of 1997, § 1056(a), 111 Stat. at 945. Plaintiff's 1997 tax year began on January 1, 1997. (Complaint Ex. A.) Therefore the period in § 6511(d)(3)(A), within which plaintiff had to timely file a refund claim for 1997 based on a foreign tax credit, was "10 years from the due date of the return to which the claim relates." Plaintiff concedes that its claim relates to 1997. (Complaint ¶ 27.) The due date for the filing of plaintiff's 1997 return was March 15, 1998. § 6702(b). Therefore, to be timely under the pre-amendment § 6511(d)(3)(A), plaintiff's 1997 claim for refund had to be filed on or before March 15, 2008. Since the claim was not filed until May 15, 2009, it is clearly not timely.

E. *Plaintiff's 1998 refund claim was not timely filed.*

Plaintiff's 1998 refund claim, based on foreign tax credits related to that year, was filed on May 15, 2009. (Complaint ¶ ¶ 16-18, 29.) Since plaintiff's 1998 tax year began on January 1, 1998, the provisions of § 6511(d)(3)(A) as amended apply. Under amended § 6511(d)(3)(A), taxpayer had "10 years from the date prescribed by law for the filing of the return for the year in which such taxes were actually paid or accrued." § 6511(d)(3)(A). Plaintiff claims to have contested the Belgian tax liability. (Complaint ¶ ¶ 11, 12.) According to the complaint that

contest was not resolved until January 31, 2002. (Complaint ¶ 13.) Based on the facts alleged in the complaint, under the all events test, plaintiff's 1998 foreign tax liability accrued in 2002, when the alleged contest over the Belgian tax was concluded.

Plaintiff acknowledges that a portion of the Belgian tax it paid in 2002 was allocable to its 1998 tax year. (Complaint ¶ ¶ 15, 29.) That is the basis for its 1998 refund claim. (Complaint ¶ 29.) As noted above, while the foreign tax liability accrued in 2002, that accrual relates back to the year to which the Belgian tax related, 1998. Therefore, the year in which the tax accrued for purposes of § 6511(d)(3)(A) was 1998, not 2002, in light of the well established relation back rule. *Reading & Bates; AMP, Inc.*; *Campbell; Cruz; Tilga*. As noted above, Congress did not alter the relation back rule for determining the proper year in which a foreign tax accrues when it amended § 6511(d)(3)(a) in 1997. In fact, Congress codified that rule when it amended § 905(c).

Under amended § 6511(d)(3)(A), the 10-year period for filing a refund claim based on a foreign tax credit begins on the due date for the filing of the return for the year to which the foreign taxes relate. *Reading & Bates; Campbell; Cruz; Tilga*; § 905(c); Rev. Rul. 58-55, 1958-1 C.B. 266; Rev. Rul. 77-487, 1977-2 C.B. 479; Rev. Rul. 84-125, 1984-2 C.B. 125. It is not disputed that in this case that is 1998. (Complaint ¶ 29.); The due date for plaintiff's 1998 return was March 15, 1999. (Complaint Ex. B); § 6702(b). Therefore, the period of limitations in amended § 6511(d)(3)(A), for plaintiff to file a claim for refund based on a foreign tax credit for its 1998 year, expired on March 15, 2009, 10 years after the due date for the return for that year. Since plaintiff's 1998 refund claim was not filed until May 15, 2009, the 1998 refund claim at issue here was not timely filed.

CONCLUSION

Since plaintiff's 1997 and 1998 refund claims were not filed within the limitations period set forth in § 6511(d)(3)(A), either the pre-amendment version or the amended version, those claims were not timely filed.  Accordingly, the refund claims at issue in the complaint have not be duly filed for purposes of § 7422(a), and this Court lacks subject matter jurisdiction to consider those claims.  Defendant respectfully move this Court for an order dismissing the complaint without prejudice.

                Respectfully submitted,

                   s/Benjamin C. King, Jr.
                BENJAMIN C. KING, JR.
                Attorney of Record
                U.S. Department of Justice
                Tax Division
                Court of Federal Claims Section
                Post Office Box 26
                Ben Franklin Post Office
                Washington, D.C. 20044
                (202) 307-6506

                KATHRYN KENEALLY
                  Assistant Attorney General
                DAVID I. PINCUS
                 Chief, Court of Federal Claims Section
                MARY M. ABATE
                 Assistant Chief

                   s/Mary M. Abate
                 Of Counsel

June 14, 2012